IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

KRISTINA THOMSEN, as conservator for
MINOR T., a minor child,

    Plaintiff,

    v.

TOPGOLF USA HILLSBORO, LLC a
Delaware limited liability company, and
TOPGOLF INTERNATIONAL, INC., a
Delaware corporation,

    Defendants/Third-Party Plaintiffs,

    v.

KRISTINA THOMSEN, an individual; JIM
WATKINS, an individual; and ARTHUR
HUNG, an individual,

    Third-Party Defendants.

No. 3:23-cv-01028-HZ

OPINION & ORDER

Anne Foster
Samuel T. Smith
Jaimee King
SMITH FOSTER KING LLP
3330 NW Yeon Ave, Suite 240
Portland, OR 97210

    Attorneys for Plaintiff

1 – OPINION & ORDER

Michael A. Yoshida
MB LAW GROUP, LLP
117 SW Taylor Street, Suite 200
Portland, OR 97204

Heidi L. Mandt
WILLIAMS KASTNER
805 SW Broadway, Suite 2440
Portland, OR 97205

    Attorneys for Defendants/Third-Party Plaintiffs

J. Randolph Pickett
Samantha Stanfill
PICKETT DUMMIGAN WEINGART LLP
Centennial Block, Fourth Floor, 210 SW Morrison Street
Portland, OR 97204

    Attorneys for Third-Party Defendant Kristina Thomsen

HERNÁNDEZ, Senior District Judge:

Plaintiff Kristina Thomsen, as conservator for Minor T., a minor child, brings this negligence action against Defendants TopGolf USA Hillsboro, LLC, and TopGolf International, Inc. ("TopGolf"). TopGolf also brings third-party claims for contribution against Third-Party Defendants Kristina Thomsen ("Thomsen"), Jim Watkins ("Watkins"), and Arthur Hung ("Hung"). All the claims in this case arise out of injuries sustained by Minor T. at a birthday party hosted by Watkins and Hung at TopGolf's Hillsboro, Oregon, location. TopGolf and Thomsen now both move for summary judgment. For the reasons that follow, the Court grants in part and denies in part TopGolf's motion and grants Thomsen's motion.

## BACKGROUND

TopGolf is a sports entertainment company that operates driving range complexes all over the United States. Witko Decl. ¶ 3, ECF 62; Smith Decl. Ex. 1 (92 US locations), ECF 75. The complex in Hillsboro, Oregon, is a three-story venue with 102 golfing "bays." Witko Decl.

2 – OPINION & ORDER

¶ 4. Each bay has an area designated for golfing and an area designated for seating and spectating. *Id.* ¶¶ 6, 7, Ex. 2. There are multiple screens playing live sports and game action in each bay, and there is music playing overhead throughout the game. Second Thomsen Decl. ¶ 2, ECF 76.

To demarcate the different areas of the bay, there is a red line painted on the floor approximately three feet from the hitting mat. Witko Decl. ¶ 7, Ex. 2 at 3. The bays also include warning signs. On the sliding glass doors as you enter the bays, a sign warns guests that they are "ENTERING GOLF AREA" and that there is a "[r]isk of errant golf balls or clubs." *Id.* at ¶ 5, Ex. 1. Signs warning spectators to "stay behind the red line" with an image depicting an individual holding nachos struck in the chest or head by a golf club are posted on columns in each bay. *Id.* ¶ 9, Ex. 3; Yoshida Decl. Ex. 12 (Irizarry Dep.) 18:18-19:19, ECF 64. On the ball dispenser attached to the driving range mat in each bay is as a sign that warns guests to, among other things, "swing safely" and "look before you swing." Witko Decl. ¶¶ 10-11, Ex. 4. At routine intervals, the venue also plays pre-recorded safety warnings multiple times per hour on its sound system, which include a warning for guests to stay behind the red line when not golfing. Halbrook Decl. Exs. 1-2, ECF 63; Witko Decl. ¶¶ 13-14; Yoshida Decl. Ex. 7 (Halbrook Dep.) 34:2-35:25, 38:6-39:7. These warnings are consistent with the TopGolf Safety Rules posted on its website, which provide that "only the person hitting the ball should stand beyond the red line" and "all other players should stand behind the red line at all times." Witko Decl. ¶ 8.

At the start of play, the bay host assigned to the bay is required to perform a bay tour and hold a safety conversation with every customer. Smith Decl. Ex. 22 (Halbrook Dep. Vol. I) 73:15-17. The bay tour includes a warning to stand behind the red line unless it is your turn to play. *Id.* at 75:14-76:12. The bay host is also required to show each player a screen listing

3 – OPINION & ORDER

TopGolf's three rules—including that they stand behind the red line—and confirm their acceptance of these terms. Smith Decl. Ex. 11. The bay host is tasked with monitoring customer behavior to enforce TopGolf's rules throughout gameplay. Smith Decl. Ex. 25 (Irizarry Dep.) 54:16-56:5.

In 2013 and 2014—about eight years after TopGolf began operations—building officials in different states warned that its floorplan did not comply with the International Building Code, in part because it lacked a barrier between the mats and the seating area. Smith Decl. Ex. 12 (Virginia); Smith Decl. Ex. 13 (Arizona); Smith Decl. Ex. 27 (Miner Dep.) 79:1-13 (Florida). TopGolf's prior insurer also recommend the installation of guardrails between the mats and the sitting area so that there was not a "direct path of access to the hitting mats" to "prevent players from running on the mats to strike the golf balls." Smith Decl. Ex. 14 ("This will provide a physical barrier that will prevent players from improperly using the stations."); Smith Decl. Ex. 15 (noting that the insured was planning to install additional rails to prevent "the Happy Gilmore" issue). Years later, when no rails had been installed, the insurer repeated its recommendation, indicating that "physical segregation may reduce potential for loss associated with struck by incidents preventing guest from walking into swing radius." *Id.* at Ex. 16.

At issue in this case is an injury that occurred in November 2021, when Minor T.—accompanied by his mother, Thomsen—attended a friend's 10th birthday party hosted by Hung and Watkins at TopGolf Hillsboro. Minor T. was nine years old on the date of the party, and it was his fourth visit to the Hillsboro location. Yoshida Decl. Ex 13 (Interrogatory Resp. 11). There were 12 minor boys at the birthday party, and they were assigned two adjoining bays. TopGolf does not allow minors to use the driving range without adult supervision. Third-Party Am. Compl. ¶ 14, ECF 23. The Third-Party Defendants were the only adults in attendance.

4 – OPINION & ORDER

After the group arrived at the bays, the Bay Host approached Hung to provide a "bay tour." Yoshida Decl. Ex. 5 (Campollo Dep.) 29:10-30:14. The Bay Host testified that Hung declined a bay tour because they already understood the rules of the game given their prior visits to the venue. *Id.* She did not conduct a bay tour or go over the game rules on the screen in each bay. Smith Decl. Ex. 20 (Campollo Dep. Vol. I) 30:5-34:7, 32:15-17. But Hung and Watkins testified that they both notified all the boys multiple times throughout the party that they needed to stay behind the red line when they were not golfing. Yoshida Decl. Ex. 2 (Hung Dep) 61:4-16; Yoshida Decl. Ex. 3 (Watkins Dep.) 11:8-20, 30:20-31:9, 36:14-20.

About 37 minutes into their visit, the boys attending the party began to wrestle and throw balls from the driving range bay. Witko Decl. Ex. 5 at 37:00-44:20. At times, boys crossed the red line into the golfing area during game play. *Id.* at 41:20-42:10. The TopGolf Team Lead and Lead in Training that day intervened and required the boys to physically move back and away from the golfing areas. *Id.* at 46:50-47:20; Yoshida Decl. Ex. 8 (Bozik Dep.) 32:7-36:4, 38:2-43:7, 100:17-101:11. While Watkins stood nearby, the Team Lead warned the boys that only one golfer at a time was allowed beyond the red line and all others needed to stay behind it, pointing to the warning sign on the bay column. Yoshida Decl. Ex. 8 (Bozik Dep.) 32:7-36:4, 38:2-43:7, 100:17-101:11. Minor T. and all three Third-Party Defendants have no recollection of the Team Lead's warning. Yoshida Decl. Ex. 2 (Hung Dep) 39:4-40:4, 65:5-16; Yoshida Decl. Ex. 3 (Watkins Dep.) 17:6-19:11; Yoshida Decl. Ex. 4 (Thomsen Dep.) 75:13-76:22; Yoshida Decl. Ex. 9 (Minor T. Dep.) 54:17-56:3.

Just minutes after the Team Lead and Lead in Training left the bay, some of the boys begin crossing the red line into the golfing area during active game play. Witko Decl. Ex. 5 49:50-50:20. This continued for some time and in the presence of the Hung, Watkins, and

Thomsen. *Id.* at 50:34-1:00:06. The boys at some point congregated across the red line in both bays to throw balls at the Kubota tractor that picks up golf balls. *Id.* at 1:08:54.

A few minutes later, as the boys continued to throw balls at the Kubota tractor, Minor T.'s accident occurred. Witko Decl. Ex. 5 at 1:10:45-1:11:08, 1:12:00 (incident). Right before the incident, Minor T. crossed the red line in Bay 211 along with several other boys. *Id.* at 1:11:42-1:11:51. Another boy stepped onto the driving range mat of Bay 212 as Minor T. stepped into the golfing area to throw a ball over the boy's head. *Id.* 1:11:53-58. Minor T. was then struck during the golf swing's follow-through. Yoshida Decl. Ex. 10 (Watkins-Hung Dep.) 13:9-17:16; Yoshida Decl. Ex. 11 (Watkins-Hung Dep.) 15:11-16:6.

In the video of the incident, Thomsen was present in the bay throughout the event, remaining seated and working on her laptop until the time that Minor T. was struck. *See* Witko Decl. Ex. 5 (Video); Yoshida Decl. Ex. 4 (Thomsen Dep.) 53:15-55:24. But Thomsen testified at her deposition that she got up to intervene when Minor T. was throwing golf balls. Yoshida Decl. Ex. 4 (Thomsen Dep.). 56:18-58:15, 90:9-91:15.

Club strike incidents have occurred at other TopGolf locations. Over the past five years, there have been over 100 club-strike accidents at the six West coast TopGolf locations. Smith Decl. Ex. 17. Locally, one employee estimated that someone is struck by a golf club once per month at the Hillsboro location. Smith Decl. Ex. 19 (Brown Dep.) 33:12-17. Ninety-two percent of club-strike accidents involve injuries to the face or head, and seventy percent involve children. Smith Decl. Ex. 17 at 3. TopGolf employees testified in depositions that TopGolf is aware that the type of injury here occurs at other venues across the country. Smith Decl. Ex. 23 (Halbrook Dep. Vol. II) 16:11-17:8, 33:10-17, 46:6-8.

///

**STANDARDS**

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial responsibility of informing the court of the basis of its motion, and identifying those portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting former Fed. R. Civ. P. 56(c)).

Once the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party to present "specific facts" showing a "genuine issue for trial." *Fed. Trade Comm'n v. Stefanchik*, 559 F.3d 924, 927–28 (9th Cir. 2009) (internal quotation marks omitted). The nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. *Bias v. Moynihan*, 508 F.3d 1212, 1218 (9th Cir. 2007) (citing *Celotex*, 477 U.S. at 324).

The substantive law governing a claim determines whether a fact is material. *Suever v. Connell*, 579 F.3d 1047, 1056 (9th Cir. 2009). The court draws inferences from the facts in the light most favorable to the nonmoving party. *Earl v. Nielsen Media Rsch., Inc.*, 658 F.3d 1108, 1112 (9th Cir. 2011). If the factual context makes the nonmoving party's claim as to the existence of a material issue of fact implausible, that party must come forward with more persuasive evidence to support its claim than would otherwise be necessary. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

///

///

# DISCUSSION

TopGolf and Thomsen both move for summary judgment. TopGolf moves for summary judgment on Plaintiff's claim against it for negligence. Thomsen moves for summary judgment on TopGolf's claims against her for contribution and negligence. The Court addresses each Party's motion in turn.

## I. TopGolf's Motion for Summary Judgment

TopGolf makes five arguments in its motion for summary judgment. First, TopGolf seeks to narrow the scope of Plaintiff's negligence claim, arguing that Counts 2 through 5 are not valid theories of premises liability under Oregon law. Second, TopGolf argues that it is entitled to summary judgment on Plaintiff's premises liability claim because its warnings were adequate. Third, TopGolf argues that there was no "unreasonably dangerous condition" that could expand its duty under Oregon law beyond a duty to warn. Fourth, TopGolf argues that Plaintiff cannot prove causation. Finally, TopGolf moves for summary judgment on Plaintiff's claim for punitive damages.

### A. Scope of Premises Liability

The Parties agree that this case involves a premises liability claim by an invitee. They disagree, however, as to whether Counts 2 through 5 of Plaintiff's claim fall within the duty owed by TopGolf to Minor T. "Negligence claims by an invitee based on premises liability fall into the category of cases the [Oregon] Supreme Court has said 'invoke a status, relationship, or a particular standard of conduct that creates, defines, or limits the defendant's duty.'" *Ault v. Del Var Properties, LLC*, 281 Or. App. 840, 845, 383 P.3d 867 (2016) (quoting *Fazzolari v. Portland School Dist. No.* 1J, 303 Or. 1, 17, 734 P.2d 1326 (1987)). Possessors of land have a duty "to discover conditions of the premises that create an unreasonable risk of harm to the invitee" and

"either to eliminate the condition creating that risk or to warn any foreseeable invitee of the risk so as to enable the invitee to avoid the harm." *Woolston v. Wells*, 297 Or. 548, 558, 687 P.2d 144 (1984). In other words, "in the context of the condition of its premises, the owner is obligated to take reasonable action to protect the invitee against unreasonable risks of harm." *Moorehead v. Tri-Met*, 273 Or.App. 54, 68, 359 P.3d 314 (2015), *rev. den.* 358 Or. 550, 368 P.3d 25 (2016). "[W]hat action must be taken to protect an invitee from an unreasonable risk of harm . . . will depend on the circumstances, including the nature of the risk, the possessor's knowledge, and the arrangement or use of the premises." *Ault*, 281 Or. App. at 847.

TopGolf first argues that Plaintiff's claim inappropriately relies on generalized "foreseeability" standards to create a new list of ways in which possessors can be subject to liability. Def. Mot. Summ. J. 16, ECF 61. Specifically, TopGolf suggests that any allegations beyond a strict failure to "warn" or to "eliminate the condition creating the risk" fail as a matter of law. *Id.* at 17. Plaintiff does not directly dispute TopGolf's characterization of the applicable standards but instead argues that each count fits within this framework. Thus, the question here is largely a matter of degree. The Court must determine at which point the allegations of liability are too divorced from the special duty owed here that they become general allegations negligence and fail as a matter of law.

TopGolf challenges Counts 2 through 5 of Plaintiff's claim for negligence.[1] Count 2 alleges a "negligent failure to supervise and enforce safety rules" by failing to supervise the birthday party, failing to take corrective action once it knew the attendees had violated its safety rules, and failing to enforce TopGolf's rules and procedures. First Am. Compl. ¶ 26, ECF 22.

---

[1] TopGolf does not challenge Count 1, which alleges a "Failure to Warn" or "Instruct on Safety Rules." First Am. Compl. ¶ 24.

9 – OPINION & ORDER

Count 3 alleges a negligent failure to train or supervise employees regarding TopGolf's safety policies. First Am. Compl. ¶ 28. Count 4 alleges negligent design of the bay by failing to install adequate warning signs, failing to install physical safety barriers, and creating an unreasonably dangerous condition. First Am. Compl. ¶ 30. Finally, Count 5 alleges a negligent failure to take reasonable precautions by failing to implement various safety measures to prevent injuries to minors. First Am. Compl. ¶ 32.

The Court finds that two of Plaintiff's claims properly fall within the scope of a premises liability claim and two do not. Consistent with premises liability under Oregon law, in Counts 3 and 4 Plaintiff essentially alleges that TopGolf failed to eliminate a condition creating an unreasonable risk of harm or failed to eliminate an unreasonably dangerous condition. Thus, taken together with Count 1, Plaintiff alleges three different theories of premises liability: (1) failure to warn; (2) failure to eliminate a condition creating a risk of harm for which there was no adequate warning; and (3) failing to eliminate an unreasonably dangerous condition.

Counts 2 and 3, however, fall outside the bounds of premises liability. Count 2 seeks to hold TopGolf liable for failing to supervise the party attendees and enforce safety rules. Plaintiff, however, has not identified any such duty arising out of premises liability under Oregon law, and the Court finds none. Indeed, the only cases in which the Court has found something akin to an affirmative duty to intervene or supervise involve crimes committed by third parties. *See Brown v. J.C. Penney Co.,* 297 Or. 695, 699, 688 P.2d 811 (1984) ("If the place or character of his business, or his past experience, is such that he should reasonably anticipate careless or criminal conduct on the part of third persons, either generally or at some particular time, he may be under a duty to take precautions against it, and to provide a reasonably sufficient number of servants to afford a reasonable protection."). Count 3 similarly seeks to hold TopGolf liable for failing to

train or supervise its employees. Again, the Court finds no support for such a claim under Oregon law. *Haile v. Hickory Springs Mfg. Co.,* 698 Fed. Appx. 875-76 (9th Cir. 2017) (rejecting the plaintiff's attempt to "expand Oregon's law of premises liability to encompass all foreseeable risks of harm"). Accordingly, the Court grants TopGolf's motion for summary judgment on Counts 2 and 3 of Plaintiff's first claim for relief.

      B.      Adequacy of TopGolf's Warnings

TopGolf also moves for summary judgment on Plaintiff's negligence claim by arguing that it fulfilled its duty to warn. As described in the previous section, possessors of land have a duty "to discover conditions of the premises that create an unreasonable risk of harm to the invitee" and "either to eliminate the condition creating that risk or to warn any foreseeable invitee of the risk so as to enable the invitee to avoid the harm." *Woolston*, 297 Or. at 558. Under Oregon law, a warning is adequate if it describes both "the hazardous condition and the risk posed by that condition." *Nelsen v. Nelsen*, 174 Or. App. 252, 260, 23 P.3d 424 (2001) (citation omitted) (holding that a triable issue existed as to the adequacy of the warning because it provided insufficient information about the nature of the risk for the plaintiff to take "preventive action").

Viewed in the light most favorable to Plaintiff, a reasonable jury could conclude that TopGolf's warnings were not adequate. While there is no dispute that TopGolf provided warnings, some of the warnings may not have been visible, audible, or specific enough to satisfy TopGolf's duty of care. For example, signs in the bay may not have been in the guests' line of sight as they crossed the red line. Signs were located on the ball dispenser and on columns between each bay, partially hidden by televisions mounted on the column. Witko Decl. Exs. 3, 4. Warnings on the sound system may blend into the music and noise of the venue. Second

11 – OPINION & ORDER

Thomsen Decl. ¶¶ 2, 3; Smith Decl. Ex. 18 (Bozik Dep.) 69:20-71:20; Smith Decl. Ex. 19 (Brown Dep.) 20:5-8, 21:21-24:5; Smith Decl. Ex. 23 (Halbrook Dep. Vol. II) 34:15-41:5. And the content of the signs may not have adequately conveyed the risk of harm, as they were sometimes vague and contained humorous content. Smith Decl. Ex. 25 (Irizarry Dep.) 18:5-19:19 (testimony that sign was designed to be quirky and "maybe" make a child laugh). Further, the party attendees here were not given a bay tour nor were they specifically required to sign off on the TopGolf rules that included safety warnings. Smith Decl. Ex. 20 (Campollo Dep. Vol. I) 30:5-34:7. The record also does not demonstrate that Minor T. was warned by the Team Lead to stay behind the red line when she eventually intervened, Smith Decl. Ex. 18 (Bozik Dep.) 88:1-7 (testifying that she was not sure if she told all ten kids), or whether the Team Lead specifically conveyed the risk of injury to the boys along with her warning, *id.* at 89:6-10. Viewing these facts in the light most favorable to Plaintiff, summary judgment is inappropriate on this record. *See Wolff v. Padja, Inc.*, 732 F. App'x 614, 615–16 (9th Cir. 2018) (applying Oregon law and finding a reasonable jury could conclude that a warning that there was a "large step" may have "lacked crucial detail about the nature of the risk" like the location and visibility of the step such that it was inadequate to allow the plaintiff to avoid falling).

    C.    Unreasonably Dangerous Condition

TopGolf asks the Court to find that its venues do not present an unreasonably dangerous condition as a matter of law. "[T]ypically, a possessor's duty to protect a business invitee from an unreasonable risk of harm will be satisfied by a warning, because a warning will make the risk known to the invitee." *Ault*, 281 Or. App. at 849 (quoting *Wilk v. Georges*, 267 Or. 19, 23–26, 514 P.3d 877 (1973)). But "the presence of an unreasonably dangerous condition could necessitate *more* than a warning to fulfill the possessor's duty to keep the premises reasonably

safe and to protect an invitee from an unreasonable risk of harm, even when the risk is known and appreciated." *Id.* at 849–50. "An 'unreasonably dangerous condition' has been defined in the case law as 'a condition which cannot be encountered with reasonable safety even if the danger is known and appreciated.'" *Id.* at 844 n.1 (quoting *Wilk*, 267 Or. at 26)).

The Court finds that summary judgment is inappropriate on whether TopGolf's bay design presents an unreasonably dangerous condition. Though TopGolf argues that its venues do not present any danger except those inherent to the game of golf, a reasonable jury could conclude that the facility is different enough from a driving range that the dangers presented by TopGolf cannot be encountered with reasonable safety even if the danger is known. Specifically, TopGolf places golfers and spectators in close proximity and in an atmosphere with loud music, food, and alcohol. Like an icy flight of stairs or a slippery floor, a spectator at TopGolf may not appreciate the dangers presented by the game and bay design. *See Wilk*, 267 Or. at 25–26 (indicating that "an icy flight of stairs, a slippery floor, or a defective crosswalk" may have an unreasonably high probability of harm in spite of a warning that the duty to make conditions safe is not satisfied by a simple warning); *Pierce v. Atrium TRS V, LLC*, No. 3:17-CV-00862-YY, 2018 WL 2977383, at *5 (D. Or. June 13, 2018) (suggesting that some affirmative act of the landowner—such as changing the physical condition of a walkway in a way that makes it more hazardous—could create an unreasonably dangerous condition). Indeed, despite the warnings provided by TopGolf as described above, injuries of this nature continue to occur at its venues. Smith Decl. Ex. 17 (summary chart noting over 100 incidents involving golf clubs or golf club swings in TopGolf's six west coast location between February 2019 and May 2024); Smith Decl. Ex. 23 (Halbrook Dep. Vol. II) 16:11-17:8, 33:10-17, 46:6-8 (testimony that TopGolf was aware

13 – OPINION & ORDER

of struck-by incidents at venues across the country). In sum, this is an issue best left for the jury to decide.

D. Causation

TopGolf also argues that Plaintiff cannot show that its alleged failure to warn or eliminate risk caused Minor T's injury.[2] "[A] plaintiff must establish that the defendant's conduct . . . in fact caused [a legally cognizable] harm to the plaintiff." *Sloan v. Providence Health Sys.-Or.*, 364 Or. 635, 643, 437 P.3d 1097 (2019). "[T]he causal connection between [the] defendant's acts or omissions and the plaintiff's injuries must not be left to surmise or conjecture." *Sims v. Dixon*, 224 Or. 45, 48, 355 P.2d 478 (1960). "As used in the negligence context, the element of 'causation' ordinarily refers to 'causation-in-fact' or 'but-for' causation." *Haas v. Est. of Carter*, 316 Or. App. 75, 82, 502 P.3d 1144 (2021), *aff'd*, 370 Or. 742, 525 P.3d 451 (2023) (citation and quotations omitted). "Thus, a plaintiff ordinarily must establish 'causation' by proving that, but for the defendant's negligence, the plaintiff would not have suffered harm." *Id.* However, a "substantial factor" test applies in cases where "two causes concur to cause an event, and either, operating alone, would have been sufficient to cause the identical result." *Haas v. Estate of Carter*, 370 Or. 742, 750–51 (2023).

Viewed in the light most favorable to Plaintiff, there is sufficient evidence from which a reasonable jury could find that TopGolf's actions caused Plaintiff's injury. Several state governments and TopGolf's prior insurer warned of the risk of injury from the lack of a guardrail. As TopGolf points out, much of this evidence is focused specifically on the "Happy Gilmore Problem" or the fall risk from the open bays. Smith Decl. Ex. 12 (Virginia Department

---

[2] Plaintiff also makes arguments regarding comparative fault in her response brief, but TopGolf does not appear to challenge comparative fault in its motion. Accordingly, the Court declines to address it further.

14 – OPINION & ORDER

of Building and Development letter discussing IBC guardrail requirements and noting that the lack of a barrier is an issue to protecting occupants from the open-sided floor); Smith Decl. Ex. 14 (Philadelphia Insurance Company Letter discussing the use of railings to prevent players from running on to the mats to strike the golf ball), Smith Decl. Ex. 15 (2014 insurance worksheet expressing similar concerns). But this evidence demonstrates that TopGolf knew that changes to its bay design could reduce the risk of horseplay. And in 2016 and 2017 emails, TopGolf and its insurer discussed the installation of guardrails as a way to curb club strike incidents, Smith Decl. Ex. 34 (insurer email summarizing discussion with TopGolf and noting that some states are recommending guardrails between the hitting station and sitting areas, and noting that "railing segregation should cut down on struck by incidents where guest[s] walk into swing radius"), Ex. 16 (2024 letter expressing the same), as well as the risk of harm to passersby due to the short distance between the red line and the tee, Smith Decl. Ex. 33 (email from insurer explaining that they observed a backswing that came too close to children near the red line and discussing possible changes to the red line's width to reduce struck-by incidents). There is also a dispute in the record as to whether TopGolf's reluctance to install railings had to do with the atmosphere of the bays or the unintended safety consequence that could result from the installation of guardrails. *Compare* Smith Decl. Ex. 34 (noting attempts to have guardrails implemented in the past but "there was push back from corporate due to lack of open feeling at the bays") *with* Yoshida Decl. Ex. 12 (Irizarry Dep.) 51:13-25 (testifying about safety concerns with adding a barrier in lieu of the red line). Taken together, the Court finds that there is a dispute of fact on the issue of causation. *Cf. Garrison v. Deschutes Cnty*, 334 Or. 264, 270, 48 P.3d 807 (2002) (affirming the trial court's finding that there was no causation because the danger was open and

obvious, and the plaintiffs were well aware of the risk such that "the failure to warn did not expose them to any greater risk of harm than would have been present had they been warned").

  E.  Punitive Damages

Top Golf also argues that the Court should dismiss Plaintiff's claim for punitive damages. Under Oregon law, punitive damages are recoverable in a civil action when proved by clear and convincing evidence "that the party against whom punitive damages are sought has acted with malice or has shown a reckless and outrageous indifference to a highly unreasonable risk of harm and has acted with a conscious indifference to the health, safety and welfare of others." ORS 31.730. While "simple negligence, without more, cannot support an award of punitive damages, where the evidentiary record supports findings of *both* negligence *and* the additional factors of aggravated misconduct requisite for an award of punitive damages, a punitive damages award may lie in connection with a negligence claim." *Jane Doe 130 v. Archdiocese of Portland in Oregon*, 717 F. Supp. 2d 1120, 1140 (D. Or. 2010) (citations omitted). Whether a party is entitled to punitive damages is "for the jury to decide, as long as there is evidence upon which the finding can be based." *Id.* at 1141.

The Court finds that summary judgment is inappropriate on this issue. Like the evidence cited above with regard to causation, the record is sufficient to support Plaintiff's claim for punitive damages at this stage in the litigation. There is evidence in the record that TopGolf knew of the possible risk of struck-by incidents to invitees and of the misuse of the bays without a guardrail but did not take sufficient steps to prevent this harm. *See supra* Section I(D). Further, there is evidence in the record that similar injuries may be common. *See id.* The Parties quibble about the significance of this evidence in the context of all of TopGolf's operations. For example, TopGolf argues that *only* 17 incidents involving golf clubs occurred between 2019 and

2024 at the Hillsboro venue when it is not uncommon for guests to log roughly millions of swings per year at that location. Def. Reply 15 (citing Klump Decl. ¶ 5), ECF 80. But the significance of this evidence is a fact question best left for the jury. Accordingly, the Court denies TopGolf's motion for summary judgment on Plaintiff's claim for punitive damages.

**II.     Thomsen's Motion for Summary Judgment**

Third-Party Defendant Thomsen argues that Defendant's claim against her for negligence and contribution "fail as a matter of law because her conduct was not tortious and is therefore protected under the rule of parental immunity." Third-Party Def.'s Mot. Summ. J. 5, ECF 65. Under Oregon law:

(1) A parent or child is not immune from tort liability to the other solely by reason of that relationship.

(2) Repudiation of general tort immunity does not establish liability for an act or omission that, because of the parent-child relationship, is otherwise privileged or is not tortious.

*Winn v. Gilroy*, 296 Or. 718, 727–28, 681 P.2d 776 (1984) (citing Restatement (Second) of Torts, § 895G (1979)). "In applying that rule, the court said that the proper focus is not merely on the existence of the parent-child relationship, but rather on the nature of the particular parental conduct involved." *Martin v. Yunker,* 121 Or. App. 77, 81, 853 P.2d 1332 (1993) (quoting *Winn*, 296 Or. at 731). Specifically, a parent may be liable to their child for negligence where they have a general duty of ordinary care that they would owe to other persons under the same circumstances, but a more stringent standard applies in cases where the parent's obligations are owed to their child by virtue of the parent-child relationship. *Winn*, 296 Or. at 732.

In *Martin*, the Oregon Court of Appeals created a framework for deciding (1) whether conduct is privileged and (2) the standards applicable to a parent's allegedly tortious conduct:

> First, it must be determined whether the conduct entails strictly parental obligations. If not, the conduct may be evaluated without regard to the relationship of the parties. If so, a second determination is required: whether that strictly parental conduct is merely unreasonable, in which case it is "not tortious," or whether it is "palpably unreasonable," in which case the conduct may give rise to parental liability.

121 Or. App. at 82. As to the first part of the test, "[o]bligations that arise out of the family relationship" include "physical conditions in the home, for food and medical care, for recreation, sports, toys, and games, and for general supervision." *Id.* at 83 (quoting *Winn*, 296 Or. at 732). As to the second step in the test, the Court of Appeals has defined "palpably unreasonable" as "gross negligence" or a "reckless disregard of the rights of others." *Id.*; *Garrison v. Pac. Nw. Bell*, 45 Or. App. 523, 532, 608 P.2d 1206 (1980) ("Gross negligence is characterized by conscious indifference to or reckless disregard of the rights of others" or an "I don't care what happens attitude."). "Ordinarily, the issue of gross negligence is a question of fact to be decided by the jury," but "[t]he court will withdraw the issue from the jury . . . when it can say as a matter of law that the actor's conduct falls short of gross negligence." *Garrison*, 45 Or. App. at 533 (internal citation omitted).

The Parties do not dispute that the conduct at issue here—Thomsen's alleged failure to supervise and instruct Minor T., Third-Party Am. Compl. ¶ 33—involves a strictly parental obligation. *See also Martin*, 121 Or. App. at 83 (finding "attendance at a sports or recreational activity such as scuba diving school falls within" the activities considered as arising directly out of the family relationship). Accordingly, the "gross negligence" standard applies.

The Court finds that even viewed in the light most favorable to TopGolf, no reasonable jury would find that Thomsen was grossly negligent. In *Martin*, for example, the court found that the defendants had adequately stated a claim for gross negligence where the defendants' claim

largely focused on allegations that the plaintiffs had concealed material information that directly compromised their son's safety in a scuba diving class:

> According to the allegations in the third-party complaint, plaintiffs failed to inform the diving instructors that their son was severely learning disabled and could not retain the information necessary for him to dive safely; that they failed to withdraw their son from the class when they knew or should have known that he did not have the skills to dive safely; that the parents failed to inform the diving instructors that they—and not their child—were completing the weekly quizzes in connection with the classes; and that they failed to heed their son's own requests that he not be required to participate in the open water dive, because he was experiencing stomach pains.

*Id.* at 84. Here, by comparison, Thomsen's allegedly tortious actions were quite limited. Viewed in the light most favorable to TopGolf, the evidence shows that Thomsen had concerns about the safety and layout of the venue from her previous visits, Second Yoshida Decl. Ex. 1 (Thomsen Dep.) 23:6-27:7, ECF 73, and was aware of the boys' horseplay, *id.* at 56:14–58:15. But she spent the entire birthday party working on her laptop in the back of the bay. *Id.* at 53:15-55:24. Thomsen's inaction is a far cry from the type of conduct at issue in *Martin*. The Court finds that the evidence is insufficient to show Thomsen acted with recklessness or conscious indifference to the safety of others. *See Smith v. Barry*, 37 Or. App. 319, 323–25, 587 P.2d 483 (1978) (comparing and contrasting cases where the facts establish and fail to establish gross negligence).

///
///
///
///
///
///
///

19 – OPINION & ORDER

## CONCLUSION

The Court GRANTS in part and DENIES in part Defendant TopGolf's Motion for Summary Judgment [61] and GRANTS Third-Party Defendant Thomsen's Motion for Summary Judgment [65]. The Court dismisses Counts 2 and 3 of Plaintiff's negligence claim and Defendant TopGolf's claims against Third-Party Defendant Thomsen.

IT IS SO ORDERED.

DATED: _____March 7, 2025_____.

*Marco Hernández*
MARCO A. HERNÁNDEZ
United States Senior District Judge